# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 73

APRIL TERM, A.D. 2017

June 16, 2017

ADAM JAMES BROUSSARD,

Appellant
(Defendant),

v.

S-16-0151

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sheridan County*
*The Honorable John G. Fenn, Judge*

*Representing Appellant:*

> *Office of the State Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.*

*Representing Appellee:*

> *Peter K. Michael, Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Darrell D. Jackson, Director, Kevin T. Farrelly, Student Director, and Micaela Lira, Student Intern, Prosecution Assistance Program, University of Wyoming, College of Law. Argument by Ms. Lira.*

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]   Adam Broussard challenges his conviction on one count of aggravated robbery. He claims the district court erred in ordering him to make pretrial disclosure of information requested by the State pursuant to W.R.E. 404(b).  He further contends that enforcement of that order during trial, as a sanction for his failure to disclose, violated his constitutional right to confront and cross-examine witnesses against him.  We conclude that a defendant is not required to make a pretrial disclosure of evidence under W.R.E. 404(b) and that the district court erred in limiting cross-examination by defense counsel as a sanction for failing to disclose such evidence.  However, we also conclude that the error was harmless.  Accordingly, we affirm.

## ISSUE

[¶2]   Mr. Broussard presents one issue:

> Did the court err by ruling that the State of Wyoming was entitled to demand disclosure of W.R.E. 404(b) evidence and then further err by limiting Appellant's constitutional right to confrontation and cross-examination because of a failure to disclose such evidence?

## FACTS

[¶3]   On May 23, 2015, Mr. Broussard and Keevin Ware went to Kayla Walker's apartment.  According to Ms. Walker, Mr. Broussard was upset with her because she did not give him a ride the previous evening.  Angered by their discussion, Mr. Broussard pulled out a gun, put it to Ms. Walker's head, and demanded that she give him money. Ms. Walker told him that her money was in her car.  Mr. Broussard preceded her out of the apartment and she dashed back into the apartment and locked the door.  Mr. Ware had remained in the apartment and he advised her to give the money to Mr. Broussard. Mr. Ware convinced Ms. Walker to unlock the car by using a remote control clicker from inside her apartment.  Ms. Walker unlocked the car and Mr. Ware left the apartment. From her window, Ms. Walker saw Mr. Broussard near her car and Mr. Ware in her car. A few minutes later, Ms. Walker went to the car and found that her money was gone. The incident was reported to the police.  Mr. Broussard was apprehended and arrested a few hours later.  A revolver matching the description given by Ms. Walker was located in the automobile in which he was riding.

[¶4]   Mr. Broussard was charged with one count of aggravated robbery in violation of Wyo. Stat. Ann. § 6-2-401(a)(c)(ii) (LexisNexis 2015) and one count of use or possession of a firearm in violation of Wyo. Stat. Ann. § 6-8-102.  He entered a guilty plea to the use or possession of a firearm charge and does not challenge his conviction on that charge in

1

this appeal. He pled not guilty to the charge of aggravated robbery.

[¶5] Prior to trial, the State filed a demand pursuant to W.R.E. 404(b) that Mr. Broussard provide pretrial notice of "any bad acts or charged or uncharged misconduct evidence which the Defendant intends to elicit or introduce at trial regarding any of the witnesses for either party." Mr. Broussard filed a response claiming that W.R.E. 404(b) does not require defendants to make such pretrial disclosure. "Rather," he asserted, Rule 404(b) "requires the **prosecution** to provide notice of 404(b) evidence to the **defendant**, as set forth in the plain language of the Rule." (Emphasis in original.)

[¶6] The State filed a motion in limine asking the district court to resolve the issue. After a hearing on the motion, the district court ruled that Mr. Broussard was subject to the State's demand under W.R.E. 404(b). The district court also warned that if Mr. Broussard did not disclose the requested information, the evidence could be excluded at trial. Mr. Broussard did not disclose any information in response to the State's demand prior to trial. During trial, the district court imposed the sanction by limiting defense cross-examination of at least two State witnesses.

[¶7] The jury returned a guilty verdict on the charge of aggravated robbery. Mr. Broussard was sentenced to a prison term of six to ten years on that charge, and to a concurrent term of two to three years on the firearm charge. He filed this timely appeal.

## *DISCUSSION*

[¶8] Although we generally review a trial court's orders governing discovery or the admissibility of evidence for an abuse of discretion, the primary question presented by Mr. Broussard is one of rule interpretation, which we review *de novo*. *Kovach v. State*, 2013 WY 46, ¶ 77, 299 P.3d 97, 121 (Wyo. 2013). Whether Mr. Broussard's constitutional rights have been violated also raises a legal issue that we review *de novo*. *Miller v. State*, 2006 WY 17, ¶ 7, 127 P.3d 793, 796 (Wyo. 2006).

[¶9] As discussed above, Mr. Broussard asserted during a hearing on the State's 404(b) motion that the pretrial notice provision of W.R.E. 404(b) applies only to the prosecution, not to the defense. The district court responded:

> Well, I disagree. It typically is the State [but] 404(b) is not exclusive just to impose it upon the State, we use it in civil trials, we use it -- it's a Rule of Evidence that applies to all the parties. Now there are some distinctions under 404(a) that we don't need to delve into and specific to criminal law, but 404(b) is a fundamental, straightforward, albeit complex and often one of the most litigated rules, it is one that applies to parties, whether you're a defendant or a plaintiff or a

2

prosecution or a civil or criminal. So that argument isn't going to carry the day.

On appeal, Mr. Broussard asserts that the district court misinterpreted the rule because, based on the plain language, defendants are not subject to the pretrial notice provision of W.R.E. 404(b). The State contends that the disclosure requirement of the rule applies to all parties, including criminal defendants. We agree with Mr. Broussard.

[¶10] When interpreting a rule, "we consider the language of the Rule 'as a whole, giving effect to every word, clause, and sentence.'" *Hamilton v. State*, 2015 WY 39, ¶ 14, 344 P.3d 275, 281 (Wyo. 2015) (quoting *Jones v. State*, 2011 WY 115, ¶ 11, 256 P.3d 536, 541 (Wyo. 2011)). If the language is sufficiently clear and unambiguous, the Court simply applies the words according to their ordinary and obvious meaning. *In re CRA*, 2016 WY 24, ¶ 16, 368 P.3d 294, 298 (Wyo. 2016). W.R.E. 404(b) is clear and unambiguous. It provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, ***provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.***

(Emphasis added.) The first portion of this rule, the portion not highlighted, applies to all parties, and governs the admission of evidence offered at trial by either party. *See Edwards v. State*, 2007 WY 146, ¶ 9, 167 P.3d 636, 638 (Wyo. 2007) (Rule 404(b) "is not limited to use by the prosecution and should be equally available to a defendant when used to prove his theory of defense.") (quoting *State v. Young*, 739 P.2d 1170, 1174 (Wash. Ct. App. July 8, 1987)). In contrast, the highlighted portion of the rule explicitly applies "upon request by the accused," and expressly requires "the prosecution in a criminal case" to comply with the request. It does not apply to a request by the prosecution, and it does not require the defense to provide notice in advance of trial. This language is sufficiently clear and unambiguous for us to apply the words' ordinary and obvious meaning: the defendant is not required to provide pretrial disclosure under W.R.E. 404(b).

[¶11] The State cites a single authority in support of its interpretation. A comment in the advisory notes to the 1991 amendments to the federal rules of evidence states that F.R.E. 404(b) "expects that counsel for both the defense and the prosecution will submit the

3

necessary request and information in a reasonable and timely fashion." *See* 22B Charles A. Wright & Kenneth W. Graham, *Federal Practice and Procedure: Evidence*, Preamble to Chapter 5, at 4 (2014). This comment, the State asserts, suggests that both parties may submit requests, and both parties must respond. We take a different view. We interpret the comment to mean that counsel for the defense should submit reasonable and timely requests, while counsel for the prosecution should submit reasonable and timely information in response to those requests. Given the explicit language of the rule, this is the only sensible interpretation of the advisory comment.

[¶12] The State also claims, however, that the district court has discretion to control its courtroom and proceedings, and it did not abuse that discretion when it ordered Mr. Broussard to make a pretrial disclosure. In making that assertion, the State refers to this exchange that occurred between the court and defense counsel at the motion hearing:

> THE COURT: So, you know, I'm simply applying the rule and it is a level playing field, both parties have a right to a fair trial and fundamental fairness under 404(b) analysis. This notion it -- that it applies to the State -- you've made your record, [Defense Counsel], and the Court very clearly finds that it does apply to both parties.
>
> [DEFENSE COUNSEL]: Your Honor, just to clarify -- I'm not arguing that it doesn't -- that, 404(b) can't be introduced by the defendant to support his defense, I'm arguing that there's no obligation to provide any notice of that evidence pretrial, especially when it could compromise his ability to present his defense.
>
> THE COURT: Let me make it very clear: The Court rejects that argument, and irrespective of the law or -- the law is the Court has the ability to control pretrial issues of this nature and the Court, in its discretion, specifically finds and adopts those same pretrial procedures that apply to the State under *Gleason* to the defense, and it's something this Court has done historically since I've been on the bench. So, there's your clarification.

[¶13] In general, pretrial discovery in criminal cases is governed by statute, rule, or precedent. *Kovach*, ¶ 50, 299 P.3d at 112. There is no relevant statute and, as previously discussed, W.R.E. 404(b), which the district court and the State relied upon as authority for compelled disclosure, does not apply to pretrial disclosure by a defendant. The district court referenced the pretrial procedure set forth in *Gleason v. State*, 2002 WY 161, 57 P.3d 332 (Wyo. 2002), as a basis for its ruling but, again, *Gleason* addresses

4

404(b) evidence offered by the State, not the defendant.

[¶14]   The State correctly notes that in *Gleason* we expressed a "firm preference for the *pretrial* determination of issues concerning uncharged misconduct evidence." *Id.*, ¶ 18 n.2, 57 P.3d at 340 n.2 (emphasis in original), citing *Howard v. State*, 2002 WY 40, ¶ 23, 42 P.3d 483, 491 (Wyo. 2002). *Howard* also dealt with the State's use of 404(b) evidence and we made it clear that the pretrial notice and hearing process was intended to protect a defendant's due process rights:

> We now hold that where a defendant files a pretrial demand for notice of intent to introduce evidence under W.R.E. 404(b), the same shall be treated as the making of a timely objection to the introduction of such evidence. The State must then respond with sufficient information to meet the balance of the *Huddleston* test adopted in *Vigil*. Not only will such a rule enhance the defendant's prospects of receiving due process and a fair trial, it will also enhance the district court's ability to reflect and rule upon a significant evidentiary issue. Rulings on uncharged misconduct evidence are too important to be made in the heat and pressure of a trial, with the jury twiddling its thumbs in the next room.

*Howard*, ¶ 23, 42 P.3d at 491. Those protections are necessary because of the "dangerously prejudicial nature of prior bad acts evidence" when that evidence is employed against the accused. *Williams v. State*, 2004 WY 117, ¶ 8, 99 P.3d 432, 436 (Wyo. 2004); *Dean v. State*, 865 P.2d 601, 610 (Wyo. 1993).

> Juries in our system of criminal justice . . . are not charged with determining a defendant's guilt based on the defendant's propensity to commit crime. In fact, they are expressly prohibited from doing so. Nevertheless, the overwhelming consensus of empirical studies on the use of prior-crimes evidence for impeachment purposes confirms a point made by one of the researchers in Kalvin and Zeisel's landmark study, *The American Jury*: that juries exhibit an
>
> > "almost universal inability and/or unwillingness either to understand or follow the court's instructions on the use of defendant's prior criminal record for impeachment purposes. The jurors almost universally used defendant's record to conclude that he was a bad

5

> man and hence was more likely than not guilty of the crime for which he was then standing trial."
>
> *Brunson* [*v. State*], 625 A.2d [1085,] 1100 [(N.J. 1993)] (Justice Handler, concurring in part and dissenting in part). The same danger adheres when evidence of prior crimes is introduced for Rule 404(b) purposes, and an instruction merely reciting Rule 404(b) is insufficient to overcome that danger.

*Williams*, ¶ 8, 99 P.3d at 436 (quoting *Dean*, 865 P.2d at 610). For obvious reasons, the potential prejudice or danger of misuse is not nearly so great when W.R.E. 404(b) evidence is introduced by a defendant.

> The main concerns expressed in Rule 404, which justify limiting proof going to character, do not apply when it comes to proving third-party misconduct, at least in the same way and in the same degree that they apply to defendants. To put it simply, the third party is not on trial, so the jury cannot misuse or overvalue evidence of his misconduct, penalizing the third party in anger.

1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:37, at 848 (4th ed. 2013) (discussing use of "reverse" 404(b) evidence).[1] Additionally, requiring pretrial discovery or disclosure from a defendant may have constitutional implications: "What is apparent from the cases cited and from the continuing debate over pretrial discovery and disclosures against a criminal defendant is that whether such a pretrial requirement raises a constitutional issue depends upon the circumstances surrounding the requirement and the information that will be disclosed." *Kovach*, ¶ 74, 299 P.3d at 120.

[¶15] *Kovach* also involved a challenge to a district court's order requiring pretrial disclosure by a defendant and the limiting of cross-examination as a sanction for failure to comply with the order. In *Kovach*, the State requested pretrial disclosure of all witness statements in the defendant's possession. Kovach objected contending, *inter alia*, that the statements were not discoverable under W.R.Cr.P. 16. The district court ordered that the statements be produced. Kovach did not produce statements of several state

---

[1] We would also note that protection of a defendant's due process rights also requires the State to disclose exculpatory information to the defendant. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963); *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *Kovach*, ¶ 20, 299 P.3d at 104. There is no duty of a defendant to make a similar disclosure.

witnesses. As a result, the district court imposed a sanction limiting cross-examination and ordered that "for those witnesses for whom Kovach had refused to provide statements, Kovach's cross-examination would be limited to the scope of the State's direct examination." *Id.*, ¶ 60, 299 P.3d at 114. The court enforced the sanction during trial. *Id.*, ¶ 61, 299 P.3d at 114-15. On appeal, we determined that the district court erred in ordering pretrial disclosure of statements from witnesses not listed by Kovach and in limiting cross-examination because the disclosure and the sanctions were not permitted under W.R.Cr.P. 26.2. *Kovach*, ¶ 92, 299 P.3d at 124. We reach a similar conclusion in this case.

[¶16] The district court's decision to order disclosure was driven largely by a misinterpretation of W.R.E. 404(b). The rule does not require disclosure by a defendant. Absent some compelling reason to depart from the rule, the rule should govern a defendant's disclosure obligation. The only justification offered by the State is the trial court's inherent authority to control the course of pretrial discovery and evidentiary matters.[2] Given the specific language of the rule, that justification is insufficient. We conclude that the district court erred in ordering the defendant to provide pretrial disclosure of evidence under W.R.E. 404(b).[3]

---

[2] The only authority the State cites in support of its position is *Sanchez v. State*, 2006 WY 116, 142 P.3d 1134 (Wyo. 2006). In *Sanchez*, the appellant claimed he was denied his right to a fair trial because the court imposed a time restriction on closing arguments. *Id.*, ¶ 30, 142 P.3d at 1143. We recognized that trial courts have discretion to control "their courtrooms and the proceedings therein, including closing arguments," and arrived at the unremarkable conclusion that placing a reasonable time limit on closing arguments was not an abuse of that discretion. *Id.*, ¶ 33, 142 P.3d at 1143. That decision provides no assistance in determining the scope of a trial court's authority to control pretrial discovery in criminal cases.

[3] We would also note that it is not immediately apparent how a defendant would be able to determine all of the potential 404(b) evidence that he intended to introduce at trial. Unlike the State, a defendant typically does not have the burden of producing any evidence. A defendant's decision to introduce evidence is largely dependent on the evidence produced by the State at trial.

In his initial response, Mr. Broussard sought clarification of the scope of the State's demand for disclosure:

> Due to the potential overlap of what appears to be the State's interpretation of the Defendant's obligation with regard to providing notice under 404(b) and the Defendant's right to present his defense (which includes introducing character evidence of witnesses and impeaching the credibility of witnesses as permitted by [the] Wyoming Rules of Evidence, and includes the Defendant's right to put on evidence of third-party guilt regardless of whether the person is a witness), the Defendant seeks clarification from the State as to what its Demand actually requests pre-trial, the authority for such demand, and a pre-trial

7

[¶17]  As set forth above, Mr. Broussard did not disclose any evidence in response to the order and does not assert any prejudice resulting from entry of the order.  His only claim of prejudice involves the sanctions imposed during trial.  He contends that the district court improperly infringed on his constitutional right to confront and cross-examine witnesses when it limited his cross-examination of prosecution witnesses as a sanction for failing to comply with the pretrial disclosure order.

[¶18]  We previously explained: "The Sixth Amendment to the United States Constitution and Article 1, § 10 of the Wyoming Constitution guarantee the right of an accused to confront the witnesses against him.  The primary right secured by the Confrontation Clause is the right of cross-examination."  *Hannon v. State*, 2004 WY 8, ¶ 16, 84 P.3d 320, 329 (Wyo. 2004) (citing *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974)).  However, to establish a confrontation violation a defendant must show more than just a denial of the ability to ask specific questions of a particular witness.  Rather, a defendant must show that he was prohibited "from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness … 'to expose to the jury the facts from which jurors … could appropriately draw inferences relating to the reliability of the witness.'"  *Kovach*, ¶ 98, 299 P.3d 125-26 (quoting *Hannon*, ¶ 18, 84 P.3d at 330); *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986).  We apply a "harmless error analysis" in assessing whether a Confrontation Clause violation has occurred.  *Hannon*, ¶ 11, 84 P.3d at 328.

> [T]he correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.  Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts.  These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

ruling from the Court on this issue.

Mr. Broussard's request for clarification was never specifically addressed by the court or the State.

*Id.*, ¶ 25, 84 P.3d at 332-33 (quoting *Olden v. Kentucky*, 488 U.S. 227, 232-33, 109 S.Ct. 480, 483-84, 102 L.Ed.2d 513 (1988)).  Mr. Broussard contends that the district court, in imposing the sanction, improperly limited his cross-examination of three state witnesses, Kayla Walker, Officer Adam Balthazor, and Gates Lund.  We will address each in turn.

[¶19]  Kayla Walker was the victim of the crime.  On cross-examination, defense counsel asked questions concerning her ability to remember events accurately:

> [DEFENSE COUNSEL]:  [W]ere you under the influence of anything at the time that this happened?
>
> A:     No.
>
> Q:     And so was there anything going on at the time that would have interfered with your memory of these events?
>
> A:     No.
>
> Q:     And I guess -- and I don't mean this to be confrontational, but has anything happened since the time of these events that you've reported and now that would have changed or affected your memory or your physical abilities?
>
> A:     Uhm, I did have a stroke.
>
> Q:     Okay.
>
> A:     Uhm, but it's just my physical condition, it's not mentally.
>
> Q:     Okay.
>
> A:     I'm still --
>
> Q:     Okay.  Thank you.  And I guess as far as you know, was that stroke related to anything that could have affected your memory?
>
> [PROSECUTOR]:  I'm going to object at this point under Rule 403.  She said that her memory was intact.

THE COURT: Please approach.

(THEREUPON, the following discussion was held between the Court and counsel at the bench:)

THE COURT: Where are we going, [Defense Counsel]?

[DEFENSE COUNSEL]: Your Honor, I guess my understanding is that she -- this witness suffered a stroke that was related to an overdose of drugs, and the reason for inquiring about that is not because of the potential criminality of any of that, it's just simply to discover whether her memory is intact and whether it's been affected by anything at the time or that's happened since.

THE COURT: You can get into if she had a stroke and whether that affected her memory. The fact that it was caused by substance abuse or an accident or whatever it may be caused [by], the Court is applying 403 and finds that that's inappropriate.

So if you can test her ability, that this affect had on her memory, that's fine, but the cause of the stroke is inadmissible at this point in time. [Prosecutor]?

[PROSECUTOR]: You know, you understand our 404(b) position better, I believe she's already answered that her memory is unaffected, so unless there is some basis for the normal rules of evidence to impeach her current testimony, that's the only avenue to pursue.

THE COURT: I'm going to allow her a little more latitude on that and test that a little bit more, but we don't need to get in -- whatever the case may be that caused the stroke, it's the effect of the stroke that may be relevant, not what caused it. So, make your objection, asked and answered, if appropriate. She gets a little latitude to delve into that a little more than she has. All right.

(THEREUPON, the following proceedings were held in open court:)

THE COURT: Please continue, [Defense Counsel].

[DEFENSE COUNSEL]: Thank you. So how many times have you met with the county attorney's office or with [the prosecutor] to prepare your testimony or to review the events that you're testifying to today?

A: Twice.

Although W.R.E. 404(b) was mentioned once during this exchange by the prosecutor, it is clear that the district court did not make any reference to the sanction in ruling on the objection. Additionally, the district court specifically authorized additional inquiry about any memory issues that Ms. Walker may have. Mr. Broussard has failed to establish that his cross-examination of Ms. Walker was improperly limited as a sanction for failure to comply with the pretrial disclosure order.

[¶20] Next, Mr. Broussard contends that his cross-examination of the investigating officer, Adam Balthazor, was improperly curtailed. He points to this exchange:

[DEFENSE COUNSEL]: Officer Balthazor, I just have a couple more questions for you. As the investigating officer in this case, I presume that you're familiar with or you were familiar before this trial with the alleged victim -- you talked to her for 40, 45 minutes, right -- and some of the other actors in this case?

Throughout your investigation of this case, have you -- have you come into any information regarding any criminal culpability of Kayla Walker?

[PROSECUTOR]: I would object to this.

[DEFENSE COUNSEL]: And, Your Honor, the reason --

THE COURT: Just a second, let me read it.

[PROSECUTOR]: On 404(b) grounds, 609 grounds, 402 grounds, 403.

THE COURT: Please approach.

(THEREUPON, the following discussion was held between the Court and counsel at the bench:)

11

THE COURT: Are you done with your objection?

[PROSECUTOR]: Yes.

THE COURT: Your response?

[DEFENSE COUNSEL]: My response would be, Your Honor, that Kayla Walker has been a witness who has been cooperative with the State. She's with them a couple of times, that's in evidence. The reason for my inquiry is so that the jury can evaluate any motive that she may have for her testimony.

It's also in evidence that her testimony is a little bit different at trial than it was when she was interviewed by Mr. Balthazor, and for that reason I think that her motive to cooperate as a witness in this case is relevant to her credibility as a witness.

THE COURT: What is -- what's the answer? I mean, this -- when you say she was -- she had some criminal culpability, is she guilty of this charge as well?

[DEFENSE COUNSEL]: No, Your Honor. I don't know the answer. I just want to know if they have any information that she's committed crimes that would cause her to cooperate with the State, because as far as I know, she hasn't been charged with anything since these events.

THE COURT: So you have no basis whether that's true or not.

[DEFENSE COUNSEL]: I have an idea that the answer is yes, that they do have incriminating information on her, but like I said, it can't be verified because it hasn't been charged.

THE COURT: And are you talking about drug issues?

[DEFENSE COUNSEL]: Yes.

THE COURT: All right. The objection is sustained. This is 404(b) information that wasn't disclosed. We discussed this at pretrial, the Court has ruled that 404(b) applies to the

12

defendant as well as the prosecution. It wasn't disclosed, it was demanded; the objection is sustained.

[DEFENSE COUNSEL]: Your Honor, for the record, can I respond to that?

THE COURT: Sure.

[DEFENSE COUNSEL]: My response, for the record, would be -- would include the arguments that were made at the pretrial, that the defense has no obligation to disclose this type of information to the State. The State, in fact, would be more likely to have information like this than the defendant would.

Furthermore, it goes to the witness'[s] credibility, which is always material, which is always relevant for cross-examination purposes.

THE COURT: The objection is sustained.

(THEREUPON, the following proceedings were held in open court:)

. . .

[DEFENSE COUNSEL]: I have no further questions. Thank you.

[¶21] Here, there is no question that the district court limited cross-examination as a sanction for failure to comply with the 404(b) disclosure order. Mr. Broussard, however, has failed to identify any prejudice resulting from the imposition of the sanction. At trial, defense counsel did not make an offer of proof and specifically advised the court that she didn't know what information would be generated by her questioning of Officer Balthazor. In the absence of an offer of proof showing the testimony that defense counsel hoped to elicit, we have no means of determining whether the error was prejudicial. *Kovach*, ¶ 96, 299 P.3d at 125.

[¶22] Finally, Mr. Broussard alleges that error occurred during his cross-examination of Gates Lund. During cross-examination, Mr. Broussard sought to introduce evidence that Mr. Lund was on probation when the vehicle was stopped and Mr. Broussard was arrested. When the State objected, citing W.R.E. 404(b) and the court's pretrial disclosure order, counsel for Mr. Broussard asserted that the information "isn't 404(b)

evidence," but "impeachment evidence only." He offered the evidence to demonstrate that Mr. Lund had a reason to cooperate with law enforcement and to indicate Mr. Lund's bias and partiality. An offer of proof established that Mr. Lund had been on probation at the time of this encounter for a misdemeanor, and that the police officer involved told him that if he cooperated, he was not likely to be arrested. The district court excluded this evidence because Mr. Broussard had not disclosed it before trial as the court had ordered.

[¶23] The record establishes that Mr. Broussard was attempting to engage in otherwise appropriate cross-examination. He was attempting to establish that Mr. Lund had a motive to provide testimony that was favorable to the State. We have stated that testimony which "shows a 'relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party,' is properly characterized as evidence of bias." *Garner v. State*, 2011 WY 156, ¶ 13, 264 P.3d 811, 817-18 (Wyo. 2011) (quoting *United States v. Abel*, 469 U.S. 45, 52, 105 S.Ct. 465, 469, 83 L.Ed.2d 450 (1984)). "Cross-examination intended to show bias is generally permitted by W.R.E. 607, which provides that 'The credibility of a witness may be attacked by any party, including the party calling him.'" *Garner*, ¶ 13, 264 P.3d at 818 (citing *Abel*, 469 U.S. at 51, 105 S.Ct. at 468); *see also Counts v. State*, 2012 WY 70, ¶ 33, 277 P.3d 94, 105 (Wyo. 2012); *Lawrence v. State*, 2007 WY 183, ¶ 22, 171 P.3d 517, 524 (Wyo. 2007) ("Evidence of a witness's partiality is always relevant."). As we reasoned in *Hannon*, ¶ 24, 84 P.3d at 332: "At the least, this line of questioning could have cast doubt on [the witness's] credibility by exposing a motive" to favor the prosecution. In this case, the trial court's ruling denied Mr. Broussard the opportunity to explore potential evidence of bias and a possible ulterior motive for Mr. Lund's testimony. Mr. Broussard was deprived of his Sixth Amendment right of confrontation.

[¶24] We are convinced, however, that any error was harmless beyond a reasonable doubt. Mr. Lund's testimony was, for the most part, cumulative. His testimony involved only the stop and the arrest. He testified that he was riding as a passenger in the car with Mr. Broussard and Mr. Ware when the vehicle was stopped and Mr. Broussard was arrested. He was in the right front passenger seat. His fiancée was driving the vehicle. Mr. Broussard was in the rear seat, behind Mr. Lund. Mr. Ware was seated next to Mr. Broussard. Three police officers who were present at the stop also testified to the seating arrangement -- Officers Balthazor, Rasmussen and Waugh. A black revolver matching the description of the gun used to threaten Ms. Walker was found in the vehicle on the floor where Mr. Broussard had been sitting. The black revolver was found by Officer Balthazor. Mr. Lund did not provide any testimony about the revolver. To the extent that his cooperation with law enforcement was an issue, it appears that it related only to consent to search the vehicle, not to his testimony at trial. Mr. Lund provided no testimony about the crime. Given the relative unimportance of Mr. Lund's testimony and the strength of the State's case against Mr. Broussard, we are confident beyond a reasonable doubt that the limitation placed on Mr. Broussard's cross-examination of

14

Mr. Lund was harmless error.

[¶25]   Affirmed.